# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Target General Merchandise, Inc., | ) |
| Plaintiff, | ) Court No. 17-00007 |
| v. | ) |
| UNITED STATES, | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, through its undersigned attorneys alleges the following as its complaint:

1. Plaintiff is the importer of record.

2. The protest and summons herein were timely filed.

3. All liquidated duties, charges and exactions were paid prior to commencement of litigation.

4. The imported merchandise at issue was the subject of protest number 1704-14-100718, which U.S. Customs and Border Protection ("CBP") denied on November 20, 2016.

5. The imported merchandise consists of girl's glitter/fabric ballet shoes of style FD612-1 (style name "FLETA") with outer soles composed of textile, rubber, and plastic materials.

6. The imported merchandise was entered under Tariff Schedule of the United States ("HTSUS") under subheadings 6402.99.41 as oxford height footwear of the slip on type, without a foxing or foxing like band, with uppers and outer soles of rubber/plastic, having outer soles with textile having the greatest surface area in contact with the ground during

    use of the footwear, as explained in HTSUS chapter 64 Note 4(b) and Additional U.S. Note 5, and Harmonized Tariff Schedule ("HTS") Explanatory Note ("EN") 64(C) which carries a 12.5% ad val. duty rate. .

7. In liquidation, CBP classified the imported merchandise under subheading HTSUS subheading 6402.9949, as oxford height footwear of the slip on type, without a foxing or foxing like band, with uppers and outer soles of rubber/plastic which carries a 37.5% ad val. duty rate.

8. The only difference between the HTSUS tariff classification used at entry and the HTSUS provision used at liquidation is that the HTSUS provision used at entry requires identification of the constituent material of the outer sole of the footwear to have textile as the greatest surface area in contact with the ground during use of the footwear, as explained in HTSUS chapter 64 Note 4(b) and Additional U.S. Note 5, and Harmonized Tariff Schedule ("HTS") Explanatory Note ("EN") 64(C).

9. The standard method that CBP has used to measure the constituent material of the outer sole of the imported merchandise having the greatest surface area in contact with the ground during use of the footwear is CBPL method 64-01 ("Footwear Analysis: External Surface Area of Upper (ESAU) by planimeter and Image Analysis; Identity of Footwear Components; Footwear Construction; Weight Percent of Footwear Components").

10. Although by its terms CBPL method 64-01 applies only to measurements of the ESAU, CBP has in practice adapted that test method for measurement of the surface area of the outer sole in contact with the ground during use.

11. Application of CBPL method 64-01 to measure the constituent materials of the outer sole of the imported merchandise having the greatest surface area in contact with the ground during use of the footwear involves the following steps:

   a. Identify the area of the outer sole, disregarding the area of the raised heel, the elevated area of the sole immediately forward of the raised heel, and the areas of any outer sole "accessories" and "reinforcements" described in chapter 64 note 4(b);

   b. Identify each of the materials that comprise the total surface areas of the outer sole;

   c. Apply a light coating of powder to a flat surface, usually of paper, within an area that is slightly larger than necessary to encompass the dimensions of the outer sole;

   d. Place the sample shoe, outer-sole down, in contact with the powdered surface;

   e. Apply light pressure in back-to-front and in slight side-to-side rocking motions in order to simulate walking;

   f. Place the "powdered" sample outer sole on the flat glass plate of a photocopier and make a clear copy of the outsole area;

   g. Using a planimeter, measure the surface areas that appear on the photocopy, which represent the areas of the outer sole in contact with the ground during use of the footwear;

   h. Identify the material composition of each surface area of the sample that is in contact with the ground during use;

   i. Compare the total textile materials surface area and total rubber/plastic materials surface areas in contact with the ground during use, based on the test sample;

   j. Identify based on the test sample whether or not textile materials have the greatest surface area in contact with the ground during use (even though those textile

    materials areas are not to be taken into account under the terms of chapter 64 additional U.S. note 5).

12. CBP conducted laboratory testing under CBPL method 64-01 on one sample of FLETA style FD612-1, size 13, taken from one of the entries subject to protest.

13. In CBP laboratory report number SV20140560 of April 23, 2014, CBP reported that "[t]he sample has a rubber or plastic outer sole to which a thin layer of textile material has been applied in four areas."

14. In CBP laboratory report number SV20140560 of April 23, 2014, CBP also reported that "[t]he external surface area of the outer sole is 51.5% plastic and 48.5% textile (Average of four tests)."

15. In reaching its conclusion above regarding the ratio of total plastic and textile surface areas of the outer sole, CBP apparently did not reduce the total measured plastic area to account for the areas of $1/16^{th}$ inch deep grooves cut into certain plastic areas of the outer sole.

16. Based on the results of CBP laboratory report SV20140560, CBP classified the imported merchandise in liquidation in HTSUS subheading 6402.99.49, which provides for "Other footwear with outer soles and uppers of rubber or plastics.

17. On November 7, 2014, plaintiff protested the liquidation of the subject entries claiming that CBP laboratory report SV20140560 of April 23, 2014 incorrectly identified certain portions of the outer sole of the tested sample to have been in contact with the ground in use when in fact proper planimeter measurement would have shown otherwise.

18. Plaintiff attached to its protest of November 7, 2014, a copy of the following results of testing by independent laboratories of samples of style FD612-1 (FLETA), each of which

    concluded that textile is the constituent material of the outer sole having the greatest surface area in contact with the ground during use of the footwear:

    a. Consolidated report number GZHT90448369 of July 1, 2004, issued by Intertek Testing Services Shenzhen Ltd. Guagzhou GDD Branch (test sizes 1-5 & 13) ("Intertek"),

    b. Report numbers 7498 & 7521 of July 22, 2014 (test sizes 6 & 13), and 7530-7534 of July 28, 2014 (sizes 1-5), issued by Guardian Laboratories, Inc. of Brockport, NY ("Guardian"), and

    c. Report number G619-G11-2015 of September 21, 2015 (test size 13) issued by Customs Laboratory Services LLC ("CLS").

19. Each of the independent laboratories properly measured the surface area of the outer sole not in contact with the ground in use of the tested sample by subtracting from the total measured rubber/plastic surface area the total area of the $1/16^{th}$ inch deep grooves that tested negative for contact with the ground based on the powder test results.

20. The independent laboratories reported the following results based on their testing under CBPL method 64-01:

    a. Intertek (average of 6 samples tested): 51.94% textile, 48.06% rubber/plastic;

    b. Guardian 51.7% textile, 48.3% rubber/plastic, and

    c. CLS 51.1% textile, 48.9% rubber/plastic.

21. On June 30, 2016, CBP issued HQ H270097, which instructed Customs officials at the port of Seattle, WA to deny plaintiff's protest and application for further review.

22. **HQ H270097 explains as follows the conclusion of the CBP laboratory report that a higher percentage of the outer sole surface area of the tested sample in contact with the

ground during use is of plastic rather than of textile material: "CBP further observed that the first groove is an existing line in the outer sole and in the *general area where one would determine that contact with the ground would occur*. CBP measured that first groove as well as the additional *grooves* that separate the areas of textile from the areas of rubber/plastic and determined them to be *approximately one sixteenth of an inch deep. As such they were included* in the total area measurements and in the rubber/plastic measurements as part of what is *in contact with the ground*." Italics added.

23. The explanation in HQ H270097, set forth above, does not state that the CBP test results were based on planimeter measurements under CBPL method 64-01 states that the CBP test results identified certain grooved areas of the outer sole of the tested shoe to be "in contact with the ground" during use regardless of any measurements recorded by the planimeter during CBP testing.

24. CBP had no scientific, factual, or legal basis to deny plaintiff's protest.

**WHEREFORE**, plaintiff respectfully requests that this Court render judgment in its favor and direct Customs to (1) reliquidate the subject entries, classifying the entered merchandise of style number FD612-1 ("FLETA") in HTSUS subheading 6402.99.41, dutiable at 12.50% *ad val.*, and (2) refund the excess duties collected with lawful interest.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT, LLP
Attorneys for Plaintiff
599 Lexington Avenue
36th Floor
New York, New York 10022
Tel. (212) 557-4000

Target General Merchandise, Inc. v. United States, CIT No. 17-00007

                                            /s/      Robert F. Seely
                                                    Robert B. Silverman

Dated:  New York, New York
         October 27, 2021

11336985 1